# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**LEON WEINGRAD**, individually and on behalf
of all others similarly situated,

      *Plaintiff*,

*v.*

**EVERQUOTE, INC**.,

      *Defendant.*

Case No. 1:26-cv-10197

### DECLARATION OF MADELINE CONTOIS IN SUPPORT OF DEFENDANT EVERQUOTE, INC.'S MOTION TO COMPEL ARBITRATION

I, Madeline Contois, declare and state as follows:

1. I am over the age of eighteen and am competent to make this declaration. I submit this declaration in support of Defendant EverQuote, Inc.'s ("EverQuote") Motion to Compel Arbitration.

2. I am currently employed by EverQuote as the VP, Performance Marketing. In my capacity as VP, Performance Marketing, I am familiar with the internal operations of EverQuote's websites, including the website auto.everquote.com (the "Website").

3. I am also familiar with EverQuote's data collection, lead generation processes, and internal databases.

4. The information set forth in this declaration is based on my own personal knowledge, my review of EverQuote's internal databases and business records, and my understanding of the systems used to create and maintain those records.

5. If called as a witness in this matter, I could and would competently testify to the facts set forth herein.

6. The Website, auto.everquote.com, is owned and operated by EverQuote.

7. When a consumer visits the Website and submits a request for an insurance quote, the data they enter, along with metadata regarding their visit (such as the date, time, and IP address), is securely captured and maintained directly within EverQuote's internal databases.

8. These records are created at or near the time of the consumer's interaction with the Website by, or from information transmitted by, a person with knowledge. These records are kept in the course of EverQuote's regularly conducted business activities, and it is the regular practice of EverQuote to make and maintain such records.

9. I have reviewed EverQuote's internal business records regarding Plaintiff Leon Weingrad ("Plaintiff") and the telephone number ending in 7476. Those records definitively establish that on January 14, 2026, Plaintiff visited the Website and affirmatively requested auto insurance quotes.

10. While on the Website on January 14, 2026, Plaintiff entered information into the Website's online form. Specifically, Plaintiff entered his phone number ending in 7476 and his email address sosking24@gmail.com.

11. The Website on January 14, 2026, presented with a clear and conspicuous disclosure regarding the Website's terms as shown below:

2



12. The above image is a true and accurate representation of the Website's disclosure on January 14, 2026.

13. To complete his transaction, Plaintiff was required to click a prominent orange button labeled "Get My Quotes."

14. Located directly below the "Get My Quotes" button was a clear, unambiguous disclosure. At the time of Plaintiff's visit, this disclosure stated exactly as follows:

> "By clicking Get My Quotes and submitting this form, I am providing express written consent to being contacted by you, EverQuote Marketing Partners, or by one or more agents or brokers of your partners which companies I agree may reach me to discuss my interest, including offers of insurance, at the phone number and/or email address I have provided to you in submitting this form and/or additional information obtained. I consent by electronic signature to being contacted by telephone (via call and/or text) for marketing/telemarketing purposes at the phone number I provided in this form, even if my phone number is listed on a Do Not Call Registry, and I agree that such contact may be made using an automatic telephone dialing system and/or an artificial or prerecorded voice (standard call, text message, and data rates apply). I can revoke my consent at any time. I also understand that my agreement to be contacted is not a condition of purchasing any property, goods or services, and that I may call 1-855-840-1737 to speak with someone about obtaining an insurance quote.By clickingGet My Quotes and submitting this form, I affirm that I have read and agree to this website's Privacy Policy and Terms of Use,including the arbitration provision and the E-SIGN Consent."

15. EverQuote uses a "clickwrap" agreement format. As clearly stated in the text above, by clicking the "Get My Quotes" button, the user objectively manifests their assent to the

3

Website's Terms of Use, which explicitly includes binding arbitration.

16. Within the disclosure text, the phrases "Privacy Policy," "Terms of Use," and "E-SIGN Consent" were hyperlinked. These hyperlinks were prominently underlined and highlighted in a bright blue font, deliberately distinguishing them from the surrounding text to signal their nature as clickable links.

17. EverQuote's internal records confirm that Plaintiff voluntarily entered his telephone number, was presented with this disclosure, and clicked the "Get My Quotes" button on January 14, 2026. Without Plaintiff taking these specific actions, EverQuote's system would not have obtained his phone number or consent to be contacted.

18. Attached hereto as Exhibit B is a true and correct copy of EverQuote's Terms of Use that were in effect on the Website on January 14, 2026, and which were linked directly in the disclosure Plaintiff accepted.

19. Section 2 of the Terms of Use contains a mandatory, binding Arbitration Agreement. It states the following:

> **2. Dispute Resolution By Binding Arbitration**
>
> **PLEASE READ THIS CAREFULLY. IT AFFECTS YOUR RIGHTS.** You agree to attempt in good faith to settle any dispute or claim that has or may arise between us, which arises out of or relates in any way to these Terms or your use of the Site or the Content, including, without limitation, any dispute or claim between you and a Provider (each, a "Claim"), by way of consultations between you and us, which consultations will be initiated upon written notice by any party to the other (the "Consultation Notice"). The Consultation Notice must describe the nature and basis of the Claim and set forth the specific relief sought ("Demand"). If such Claim cannot be resolved within thirty (30) days after the Consultation Notice is received, any party to the consultations may initiate an arbitration proceeding upon written notice to the other party in accordance with this Section 2. Any notice to us under this Section 2 should be addressed to: **compliance@everquote.com** ("Notice Address").**You agree to arbitrate all Claims between you and us, or any Provider, that cannot be amicably resolved in accordance with the foregoing paragraph.** This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to: (a) claims arising out of or relating to any aspect of your relationship with us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory; and (b) claims that could be alleged as class action Claims (and you agree to waive the right to participate in a class action in accordance

4

Case 1.26-cv-10197-PGL    Document 18-1    Filed 03/23/26    Page 6 of 8

with this Section 2). For the avoidance of doubt, references in this Section 2 to "Site operator," "Provider," "we", "Prospect", "you," and "us" include our respective subsidiaries, affiliates, agents, employees, predecessors in interest, successors and assigns, as well as all authorized or unauthorized users or beneficiaries of the services, information or Site Content available through the use the Site. This arbitration agreement does not preclude you from bringing an individual action in small claims court if your claims qualify, and so long as the matter remains in such court and advances only on an individual (non-class, non-representative) basis. Further, this arbitration agreement does not preclude you from bringing issues to the attention of federal, state, or local agencies, including, for example, the Federal Communications Commission or the Federal Trade Commission. You agree that, by entering into this arbitration agreement, you and we are each waiving our respective rights to a trial by jury or to participate in a class or representative action, and that arbitration of disputes pursuant to this Section 2 shall be in your individual capacity. THIS MEANS YOU ARE LIMITING YOUR RIGHT TO APPEAL AND ARE WAIVING YOUR RIGHTS TO OTHER AVAILABLE RESOLUTION PROCESSES, SUCH AS A COURT ACTION. THE ARBITRATOR MAY NOT CONSOLIDATE, COMBINE, OR JOIN THE CLAIMS OF OTHER PARTIES WHO MAY BE SIMILARLY SITUATED OR OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING. You acknowledge and agree that the Federal Arbitration Act governs the interpretation and enforcement of this provision. This arbitration provision shall survive termination of this Agreement.

The arbitration will be governed by the American Arbitration Association ("AAA") under its then-prevailing rules and procedures, including the AAA's Supplementary Procedures for Consumer-Related Disputes (collectively, the "AAA Rules"), as modified by this Agreement (but expressly excluding the Supplementary Rules for Class Arbitration and any other AAA Rules that conflict with the waiver of class arbitration and representative proceedings below), and will be administered by one (1) arbitrator with relevant industry experience appointed in accordance with the AAA Rules. The AAA Rules are available at **https://www.adr.org/Rules** or by calling (800) 778-7879. The arbitrator is bound by the terms of this Agreement and shall apply Delaware law consistent with the Federal Arbitration Act and applicable statutes of limitations, and shall honor claims of privilege recognized at law. All issues are for the arbitrator to decide, including, without limitation, issues relating to the applicability and enforceability of this arbitration agreement.

Unless otherwise mutually agreed by the parties to the arbitration, any arbitration hearings under this Section 2 will take place in the county where you are domiciled. If your Claim is for $5,000 or less, you may choose whether the arbitration will be conducted solely on the basis of documents submitted to the arbitrator, through a telephonic hearing, or by an in-person hearing as established by the AAA Rules. If your Claim exceeds $5,000, the right to a hearing will be determined by the AAA Rules. Except as otherwise provided for in this Section 2, in any arbitration between you and us under this Section 2, all AAA filing, administration and arbitrator fees for any arbitration initiated in accordance with the notice requirements above where Claims for damages do not exceed $10,000 shall, at your written request, be paid by us. Any request for payment of fees by us shall be submitted by mail to the AAA along with your demand for arbitration, and we will make arrangements to pay all necessary fees directly to the AAA. If the value of the relief sought is more than $10,000 and you are able to demonstrate that the costs of arbitration will be prohibitive as compared

to the costs of litigation, we will pay as much of the filing, administration and arbitrator fees as the arbitrator deems necessary to prevent the arbitration from being cost-prohibitive. If, however, the arbitrator finds that either the substance of your Claim or the relief sought in the Demand is frivolous or brought for an improper purpose, you agree to reimburse us for all monies previously disbursed that are otherwise your obligation to pay under the AAA Rules.

The arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. The arbitrator shall not be bound by rulings in prior arbitrations involving our other Users, but is bound by rulings in prior arbitrations involving the same User to the extent required by applicable law.

With the exception of the provision in the preceding paragraph prohibiting class arbitration or representative proceedings, if an arbitrator or court decides that any part of this Section 2 is invalid or unenforceable, the other parts of this Section 2 shall still apply to the maximum extent possible. In the event that the foregoing prohibition on class arbitration or representative proceedings is deemed invalid or unenforceable, then the entirety of this Section 2 shall be null and void. The remainder of the Terms, including, without limitation, Section 16 (Choice of Law and Forum), will remain in force.

You may opt-out of this arbitration provision only by written notice to us at the Notice Address (**compliance@everquote.com**) within thirty (30) days of your acceptance of this agreement, which notice shall include your name, address, and a clear statement that you do not wish to resolve disputes with us through arbitration.

If we make any change to this arbitration provision (other than a change to the Notice Address) during the term of your relationship with us, that change shall not apply to any Claim against us initiated prior to the effective date of the change. The change shall apply to all other Claims that have arisen or may arise between you and us. We will notify you of changes to this arbitration provision by posting the amended terms on the Site or by email, in each case at least thirty (30) days before the effective date of the changes.

Notwithstanding anything to the contrary in these Terms, Providers shall be third party beneficiaries of the rights to dispute resolution and arbitration set forth in this Section 2, and each Provider shall have the right to enforce this Section 2 against Users as if such Provider were a party to the agreement set forth in this Section 2 in the event of any dispute or claim between you and such Provider based on or relating to any transaction or interaction between you and such Provider that is enabled by or arises in connection with your use of the Site.

DO NOT USE THIS SITE IF YOU DO NOT AGREE TO THE FOREGOING BINDING ARBITRATION PROVISIONS.

20. Furthermore, the Terms of Use contain a Class Action Waiver, which states: "THE ARBITRATOR MAY NOT CONSOLIDATE, COMBINE, OR JOIN THE CLAIMS OF

OTHER PARTIES WHO MAY BE SIMILARLY SITUATED OR OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING."

21. Exhibit B is a true and accurate representation of the "Terms of Use" page that was linked to the "Terms of Use" hyperlink on the Website's Disclosure on January 14, 2026.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 23 day of March 2026, in Boston , Massachusetts .

Signed by:

*Madeline Contois*
464C6F4D6B564E7...
Madeline Contois
EverQuote, Inc.

7