**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **LEON WEINGRAD**, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**EVERQUOTE, INC.**,<br><br>*Defendant.* | Case No. 1:26-cv-10197 |

**DEFENDANT EVERQUOTE, INC.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO STRIKE CLASS ALLEGATIONS**

## I.   INTRODUCTION

It is evident from the face of Plaintiff's Complaint that this action cannot possibly proceed on a classwide basis, warranting an order striking the class allegations under Federal Rule of Civil Procedure 12(f). Because the proposed National DNC Class is facially uncertifiable in ways that no amount of discovery can cure, this Court should exercise its authority to strike the class definition here and now, rather than subjecting the parties and the Court to the expense of valuable time and resources on discovery and other motions practice.

The National DNC Class is fatally overly broad because it fails to exclude individuals who have no viable claim under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5), and its implementing regulation, 47 C.F.R. § 64.1200(c). First, the definition makes no attempt to carve out the significant number of individuals who either provided prior express consent to receive messages or who had an established business relationship ("EBR") with EverQuote. Second, it ignores the plain text of 47 C.F.R. § 64.1200(c) by sweeping in individuals

1

who did not personally register their telephone numbers on the National DNC Registry. Third, the class definition includes members who only received text messages, and text messages are not actionable under the TCPA's DNC provisions. These defects also destroy the requisite Rule 23 commonality, as individualized mini-trials into consent, EBR status, and personal registration would overwhelm any potential common questions.

Additionally, the proposed class definition is impermissibly merits-based. Membership explicitly depends on whether an individual received "telemarketing" calls. This requires the Court to make a substantive liability determination on the content of every single call just to identify who is in the class, which is a prohibited practice that violates the rule against one-way intervention. *Am. Pipe & Constr. Co. v. State of Utah*, 414 U.S. 538, 547 (1974) ("One-way intervention occurs when potential members of a class are allowed to await...final judgement on the merits in order to determine whether participation [in the class] would be favorable to their interests.").

Because these fatal flaws make certification impossible as a matter of law, the class allegations should be stricken in their entirety.

## II.    <u>FACTUAL ALLEGATIONS</u>

Plaintiff alleges EverQuote violated the TCPA by making at least three unsolicited telemarketing calls on January 14, 2026, to his residential cellular telephone number "listed on the national Do Not Call Registry..." *See* Complaint ("Compl.") at ¶¶ 14, 16-19, 21, 23-25. Plaintiff does not allege that he registered the telephone number on the National DNC Registry himself.

Plaintiff alleges that the first call "came in at 3:11 PM on January 14, 2026, but was missed." *Id*. at ¶ 23. Plaintiff alleges the "second call came in at 4:11 PM the same day," and that the "person on the line was 'Jenny' from 'EverQuote' [who was] calling to provide an auto insurance quote." *Id.* at ¶ 24. Plaintiff further alleges that this "call then dropped." *Id.* at ¶ 24.

2

Plaintiff alleges the "third call came in at 5:12 PM" also on that same day, and that the "person on the line was also from 'EverQuote.'" *Id*. at ¶ 25. On this call, Plaintiff alleges that he requested that the caller "stop calling." *Id*. at ¶ 25. Plaintiff also alleges that "the calls appear to have been intended for someone else unknown to Plaintiff," but provides no further context. *Id*. at ¶ 28.

Based on those allegations, Plaintiff seeks to represent the following nationwide classes:

> **National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call or text message from or on behalf of Defendant encouraging the purchase of Defendant's goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

*Id*. at ¶ 33.

### III.    **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading...any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). District courts have "considerable discretion to strike material under Rule 12(f)…" *Rovinelli v. Trans World Ent. Corp.*, No. CV 19-11304-DPW, 2021 WL 752822, at \*6 (D. Mass. Feb. 2, 2021) (citing *Alvarado-Morales v. Dig. Equip. Corp.*, 843 F.2d 613, 618 (1st Cir. 1988)) (quotation marks omitted). When class allegations are challenged at the pleadings stage, the "dispositive question ... is whether the complaint pleads the existence of a group of putative class members whose claims are susceptible of resolution on a classwide basis." *Rovinelli*, 2021 WL 752822 at \*6 (quoting *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013)).

"If it is obvious from the pleadings that [a] proceeding cannot possibly move forward on a classwide basis, district courts use their authority under Federal Rule of Civil Procedure 12(f) to delete the complaint's class allegations." *Downing v. Keurig Green Mountain, Inc.*, No. 1:20-CV-11673-IT, 2021 WL 2403811, at \*7 (D. Mass. June 11, 2021) (striking a nationwide class because

3

it included members without a claim under the relevant statute) (quoting *Manning*, 725 F.3d at 59) (alterations in original). Indeed, "[j]udges in this District have demonstrated a willingness to grant motions to strike class allegations." *Rovinelli*, 2021 WL 752822 at *6 (collecting cases).

## IV.    ARGUMENT—PLAINTIFF'S PROPOSED CLASS DEFINITION MUST BE STRICKEN BECAUSE IT IS FACIALLY UNCERTIFIABLE AS A MATTER OF LAW.

### A.    The Proposed Class Is Overly Broad As Defined.

A class is overbroad and uncertifiable where it contains a large number of potential members who have "no grievance" with the defendant. *Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*, 571 F.3d 672, 678 (7th Cir. 2009) ("[A] class should not be certified if it contains a great many of persons who have suffered no injury."); *Walewski v. Zenimax Media, Inc.,* 502 F. App'x 857, 861 (11th Cir. 2012) (affirming denial of class certification where proposed class definition "impermissibly include[d] members who have no cause of action"); *Lackawanna Chiropractic P.C. v. Tivity Health Support, LLC*, No. 18-CV-00649-LJV-JJM, 2019 WL 7195309, at 3 (W.D.N.Y. Aug. 29, 2019), report and recommendation adopted, No. 18-CV-649, 2019 WL 7194525 (W.D.N.Y. Dec. 26, 2019) (citing *Vigus v. Southern Illinois Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235 (S.D. Ill. 2011) ("[The plaintiff's] proposed class includes a substantial number of people who voluntarily gave their telephone numbers to the [defendant] knowing the [defendant] would call those numbers to present special commercial offers. They have no grievance with the [defendant], and ... their inclusion in the proposed class definition renders it overbroad and the class unfit for certification")); *Rivera v. Harvest Bakery Inc.*, 312 F.R.D. 254, 268 (E.D.N.Y. 2016) (holding that the proposed class definition was overbroad). This is true because some class members do not "share a viable claim." *A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*, No. 16 C 2513, 2018 WL 488257, at *4 (N.D. Ill. Jan. 18, 2018); *see Spine*

4

& *Sports Chiropractic, Inc. v. ZirMed, Inc.*, No. 3:13-CV-00489-TBR, 2014 WL 2946421, at \*10 (W.D. Ky. June 30, 2014) (holding the class definition is overbroad in that it includes persons who have no claim under the TCPA.); *McElhaney v. Eli Lilly & Co.*, 93 F.R.D. 875, 878 (D.S.D. 1982) ("The definition of a class cannot be so broad as to include individuals who are without standing to maintain the action on their own behalf."). And where overbreadth is apparent at the pleadings stage, a class is properly stricken. *PFT of Am., Inc. v. Tradewell, Inc.*, No. 98 Civ. 6413, 1999 WL 179358, at \*1 (S.D.N.Y. Mar. 31, 1999) (striking class claims where the class was not sufficiently defined).

Allowing an overbroad class to proceed past the pleadings stage creates an inherent unfairness to the defendant in view of the "in terrorem character of a class action." *Kohen*, 571 F.3d at 678; *see also Barnes v. Coca-Cola Co.*, No. 1:22-CV-01511-KJM-EPG, 2025 WL 1027431, at \*5 (E.D. Cal. Apr. 7, 2025) ("Coca-Cola—like all defendants facing suit—is 'entitled to know the class definition being alleged against them.'") (citing *DuRocher v. Nat'l Collegiate Athletic Ass'n*, No. 13-01570, 2015 WL 1505675, at \*7 (S.D. Ind. Mar. 31, 2015)). This is particularly true in TCPA class actions where the statute provides for a minimum of $500 in statutory damages per violation. 47 U.S.C. § 227(c)(5); *see also Kohen,* 571 F.3d at 677-78 ("When the potential liability created by a lawsuit is very great, even though the probability that the plaintiff will succeed in establishing liability is slight, the defendant will be under pressure to settle rather than to bet the company, even if the betting odds are good.") (citations omitted).

Here, Plaintiff's proposed National DNC Class is overly broad because it indiscriminately encompasses individuals who lack any valid legal claim against EverQuote. First, the class definition fails to exclude the significant number of individuals who provided "prior express invitation or permission" to receive communications or who had an EBR with the EverQuote.

Second, it improperly sweeps in individuals who never actually availed themselves of the TCPA's protections, capturing those who merely inherited a phone number rather than personally registering it on the National DNC Registry. Third, it includes individuals who only received text messages. Because either of these distinct failures guarantees the inclusion of uninjured, standing-less class members, striking the class definition at this early stage is fully warranted.

      1.      ***The Class Is Overly Broad Because It Includes Individuals Who Consented To Receive Calls Or Had An Established Business Relationship With EverQuote.***

Courts routinely reject class definitions that include members for whom issues of consent arise. *See Leon v. Loandepot.com, LLC,* No. 2:25-CV-01787-JLS-AGR, 2025 WL 2632396, at \*3 (C.D. Cal. Aug. 22, 2025) (striking class as overly broad because it included individuals who consented and had an EBR); *see also Ung v. Universal Acceptance Corp.*, 319 F.R.D. 537, 540 (D. Minn. 2017) ("the issue of consent makes it nigh impossible to determine the members of the putative class without a member-by-member analysis and individualized proof….The 'disparate factual circumstances' regarding each class member's consent simply 'prevents the class from being cohesive and thus [renders] it unable to be certified under Rule 23(b)(2).'"); *Brown v. Nano Hearing Tech Opco, LLC*, No. 3:24-CV-00221-BTM-JLB, 2024 WL 3367536, at \*8-9 (S.D. Cal. July 9, 2024) (finding that the plaintiff's class was flawed because it included individuals who may have consented to receiving calls from the defendant, thereby lacking standing under the TCPA); *see also Martinez v. TD Bank USA*, N.A., No. CV 15-7712(JBS/AMD), 2017 WL 2829601, at \*12 (D.N.J. June 30, 2017) (holding that a TCPA class was not ascertainable because it would require mini trials to identify individuals who did not provide prior express consent); *see also Warnick v. Dish Network LLC*, 301 F.R.D. 551, 559 (D. Colo. 2014) (denying class certification in a TCPA case and finding that the class was overbroad and not sufficiently ascertainable where, among other problems, one sub-class included persons called with consent); *Jamison v. First Credit Servs.*,

6

2013 WL 3872171, at *8 (N.D. Ill. July 29, 2013) (explaining that the court previously denied certification because the "proposed class could [have] potentially include[d] thousands of individuals who consented to receiving calls on their cellphones and thus have no grievance under the TCPA," making the class overly broad).

Under the TCPA's implementing regulations, the term "telephone solicitation" is defined to expressly exclude calls made with "prior express invitation or permission" (i.e. consent) or made to individuals who have an EBR with the caller. *See* 47 C.F.R. § 64.1200(f)(15). And because the definition of "telephone solicitation" is defined to exclude calls made with consent and made to individuals who have an EBR with the caller, the absence of consent and an EBR are essential elements that a plaintiff has the burden of proving. *Smith v. Microsoft Corp.*, 297 F.R.D. 464, 471 (S.D. Cal. 2014) ("The absence of express prior consent, however, is one of the three elements of a TCPA claim, which Plaintiff bears the burden of satisfactorily establishing for the Court."); *Fields v. Mobile Messengers Am., Inc.*, No. C 12-05160 WHA, 2013 WL 6073426, at *3 (N.D. Cal. Nov. 18, 2013) ("Because our court of appeals has stated that consent is an element of a prima facie TCPA claim, this order is duty-bound to place the burden on plaintiffs to prove a lack of prior express consent.").

Consequently, individuals who consented or had an EBR with EverQuote suffered no legal injury and lack Article III standing. *TransUnion LLC v. Ramirez,* 594 U.S. 413, 431 (2021) ("Every class member must have Article III standing in order to recover individual damages. 'Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.'") (citation omitted). "[A] proposed class m[a]y be deemed overly broad if it 'would include members who have not suffered harm at the hands of the [d]efendant and are not at risk to suffer such harm.'" *Brashear v. Perry Cnty., Ky.,* No. CIV.A. 6:06-143 DCR, 2007 WL

7

1434876, at *2 (E.D. Ky. May 14, 2007) (citation omitted).

Here, Plaintiff's proposed National DNC Class broadly captures anyone who received "more than one telemarketing call or text," without carving out those who provided consent or had an EBR with EverQuote. Because the definition necessarily sweeps in uninjured individuals, it is fatally overbroad. *See Barnes v. Coca-Cola Co.*, No. 1:22-CV-01511-KJM-EPG, 2025 WL 1027431, at *5 (E.D. Cal. Apr. 7, 2025) ("[T]he proposed class very likely includes persons who suffered no injury based on a call from [the defendant], and the court therefore must consider whether their presence means that the class definition is fatally overbroad.") (quotation marks omitted) (citation omitted); *Brown v. Nano Hearing Tech Opco, LLC*, No. 3:24-CV-00221-BTM-JLB, 2024 WL 3367536, at *8 (S.D. Cal. July 9, 2024) (striking class allegations because the TCPA expressly precludes claims by consenting individuals, meaning the class "necessarily includes any individuals who have consented" and "would also lack standing").

Because the proposed class does not exclude such individuals, a potentially large portion of its members were not harmed and possess no viable claim against EverQuote, making it incurably overbroad. The Court should strike this class definition.

> **2.     *The Class Is Overly Broad Because It Improperly Includes Individuals Who Have Not Personally Registered Their Telephone Numbers On The National DNC Registry.***

The threshold requirement for bringing a claim under the TCPA's Do Not Call (DNC) provisions is clear and unambiguous: relief is only for a "residential telephone subscriber ***who has registered his or her telephone number***." 47 C.F.R. § 64.1200(c)(2) (emphasis added) ("No person or entity shall initiate any telephone solicitation to…[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.").

8

In *Rombough*, the Court confirmed that this language must be applied as written, holding that personal registration of the phone number on the National DNC Registry is a prerequisite to standing. *Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV 15-CJW-MAR, 2022 WL 2713278, at *2 (N.D. Iowa June 9, 2022). The court in *Rombough* explained that "[t]he plain language of Section 64.1200(c) indicates that Section 227(c)(5)'s private action exists only for a residential telephone subscriber *who has registered his or her telephone number* on the national do-not-call registry." *Id.* (emphasis added). The regulation's use of the phrase "registered his or her telephone number" plainly contemplates that the person bringing suit must have been the one to place the number on the registry. *Id.*

Where a statute or regulation's language is plain, courts must give effect to that plain meaning. *Campbell v. Wash. Cnty. Tech. Coll.,* 219 F.3d 3, 6 (1st Cir. 2000) ("As in other cases involving statutory interpretation, we look first to the Act's plain language. Absent ambiguity, the inquiry ends with the text of the statute.") (citations omitted).

Here, the regulation's plain text expressly mandates personal registration. *See* 47 C.F.R. § 64.1200(c) (prohibiting "telephone solicitations" to any "residential telephone subscriber *who has registered his or her telephone number* on the national do-not-call registry of persons who do not wish to receive telephone solicitations) (emphasis added). The explicit use of the personal pronouns "his or her" combined with the active verb phrase "has registered" leaves no room for alternate interpretations. *Id.* It definitively restricts the private right of action to the specific individual who took the affirmative step to place the number on the registry, legally foreclosing claims by subsequent subscribers who merely inherited a previously registered number.

For a court "to radically depart from the statutory text, the interpretation of the plain text of the statute must be absurd, not merely unwise." *L.F.O.P. v. Mayorkas*, 656 F. Supp. 3d 274, 279

(D. Mass. 2023). Applying the literal, plain-text interpretation of § 64.1200(c) does not lead to an absurd result. To the contrary, strictly enforcing the personal registration requirement perfectly executes the statute's design. The TCPA does not automatically blanket all telephone numbers with "telephone solicitation" restrictions. Instead, the National DNC framework is built entirely upon affirmative, individual consumer choice. Had the FCC intended to protect the ten-digit number itself regardless of ownership, it would have applied the rule to "any telephone number listed on the Registry." Instead, it specifically requires that the subscriber "has registered his or her telephone number," confirming protection is triggered by a personal request.

Furthermore, privacy preferences are inherently personal. It is illogical to bind a new subscriber—who might actively seek promotional offers like auto insurance quotes—to the privacy elections of a stranger who previously held the recycled number. Dispensing with the personal registration requirement would allow plaintiffs to weaponize the TCPA by suing based on a stranger's decades-old registration, despite taking zero steps to protect their own privacy. Therefore, applying the statute exactly as written avoids, rather than creates, an "absurd result."

Thus, standing under the TCPA depends upon the individual's own affirmative act of placing the number on the DNC Registry. Legislative history indicates that Congress envisioned consumers proactively placing their numbers on the DNC list to obtain protection. *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14, 038-39 (2003). Nothing suggests that the protections flow automatically to a new subscriber who did not personally register the number. This interpretation is also consistent with First Amendment principles underlying the DNC framework, which empower individuals to opt in to restrictions on protected speech. *See Martin v. Struthers*, 319 U.S. 141, 148-49 (1943).

Plaintiff's proposed class definition ignores this mandatory prerequisite. The class is improperly defined to include individuals who have no standing because they merely acquired telephone numbers that were previously registered by someone else. By including those who never performed the affirmative act of registering their own number, the definition contravenes the plain language of 47 C.F.R. § 64.1200(c). Because the National DNC Class definition fails to limit membership to individuals who personally registered their telephone numbers, it necessarily encompasses numerous individuals with no standing to sue. As such, the class is overly broad and must be stricken.

### 3. *The Class Is Overly Broad Because It Includes Individuals Who Have Only Received Text Messages.*

The proposed National DNC Class defines membership to include anyone who "received more than one telemarketing call *or text message*." Compl. at ¶ 33 (emphasis added). Because the class expressly targets individuals whose claims are based exclusively on the receipt of text messages, it relies on a legal theory that is foreclosed by the plain text of the TCPA, rendering the class overly broad.

The private right of action governing DNC violations, 47 U.S.C. § 227(c)(5), provides a remedy only for "[a] person who has received more than one *telephone call*." 47 U.S.C. § 227(c)(5) (emphasis added). The statute does not mention text messages. While courts historically relied on FCC interpretations to stretch the meaning of the word "call," the Supreme Court's recent decision in *McLaughlin* freed the courts to interpret the TCPA as Congress actually intended. *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.,* 606 U.S. 146, 168 (2025) ("The District Court is not bound by the FCC's interpretation of the TCPA."). Thus, this Court is no longer bound by agency deference and must "independently determine for itself whether the agency's interpretation

11

of a statute is correct" using "ordinary principles of statutory interpretation." *Id*. at 155 (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402 (2024)).

The ordinary meaning of "telephone call" in 1991, when the TCPA was enacted, unambiguously referred to a voice-to-voice communication. Congress could not possibly have intended the term "telephone call" to encompass text messaging, as the technology did not yet exist. The TCPA was enacted on December 20, 1991, while the first SMS text message was not sent until nearly a year later. *Compare* 47 U.S.C. § 227 (originally enacted on December 20, 1991), with *First SMS Text Message Is Sent, History* (Oct. 4, 2022), https://www.history.com/this-day-in-history/December-3/first-sms-text-message-sent ("On December 3, 1992, the first SMS text message in history is sent[.]").

Even putting historical usage aside, as the Davis court in the Northern District of Florida explained, the ordinary meaning and usage of the term "telephone call" simply does not encompass text messages:

> No normal person refers to a text message, or thinks of a text message, as a "call." No ordinary user of the English language would write the sentence "John called Sue" intending to mean "John sent a text message to Sue," nor would any ordinary reader interpret the sentence in that manner. Certainly, no ordinary person would think of a text message as a "telephone call." This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case."

*Davis v. CVS Pharmacy, Inc.*, 797 F.Supp.3d 1270, 1273 (N.D. Fla. 2025).

Both the historical and ordinary meaning interpretations of 47 U.S.C. § 227(c)(5) are reinforced by the canons of statutory construction. The TCPA's definition of "telephone solicitation" in § 227(a)(4) refers to the initiation of a "telephone call or message." 47 U.S.C. § 227(a)(4) (emphasis added). Yet, in the private right of action provision at issue here, 47 U.S.C. § 227(c)(5), Congress deliberately chose to provide a remedy only for the receipt of more than one "telephone call." *Id*. (emphasis added). As the *Davis* court explained, courts must "presume that,

when a statute uses one term in one place and a distinct term elsewhere, the difference matters—that is, the distinct words have different meanings." *Davis*, 797 F.Supp.3d at 1274 (quoting and citing *Sunshine State Reg'l Ctr., Inc. v. Dir., U.S. Citizenship & Immigr. Servs.*, 143 F.4th 1331, 1344 (11th Cir. 2025); *accord Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 232 F.3d 854, 859 (11th Cir. 2000) ("[W]hen Congress uses different language in similar sections, it intends different meanings.")); *see also Pulsifer v. United States*, 601 U.S. 124, 149 (2024) ("In a given statute, the same term usually has the same meaning and different terms usually have different meanings.") (citation omitted). Thus, Congress's choice to omit the words "or message" from the private right of action was a deliberate one that forecloses Plaintiff's claim.

Indeed, in the wake of *McLaughlin*, many courts have applied the statute's plain text and structure to dismiss DNC claims based on texts. *See Davis*, 797 F.Supp.3d at 1270-76 (holding that "telephone call" cannot include texts); *see also Jones v. Blackstone Med. Servs., LLC*, 792 F.Supp.3d 894, 900–01(C.D. Ill. 2025) (rejecting reliance on FCC's § 227(b) rulemaking in the § 227(c) context); *Radvansky, v. 1-800-FLOWERS.COM, INC*, No. 1:25-CV-2811-TWT, 2026 WL 456919, at*3–4 (N.D. Ga. Feb. 17, 2026) (same); *Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-CV-00847-SDM-CPT, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) (same).

Because text messages simply do not constitute "telephone calls" under 47 U.S.C. § 227(c)(5), individuals who only received text messages possess no legal grievance under the TCPA's DNC provisions. By sweeping individuals into the proposed National DNC Class, the class is overly broad, and the class allegations should therefore be stricken.

**B.     The Proposed Class Members Lack Commonality.**

"The commonality requirement [of Federal Rule of Civil Procedure 23] demands only that there be 'questions of law or fact common to the class.'" *Vega v. T-Mobile USA, Inc.*, 564 F.3d

1256, 1268 (11th Cir. 2009) (citation omitted). A class that lacks commonality is also not certifiable. *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 477-78 (8th Cir. 2016) ("Under Rule 23(a), a district court may certify a class only if it 'is satisfied, after a rigorous analysis,' that the four threshold requirements are met" which includes "commonality of legal or factual questions.") (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Messner v. Northshore Univ. Health Sys.*, 699 F.3d 802, 815 (7th Cir. 2012) (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir.2005)). In other words, there must be at least one "common contention" that "is central to the validity" of the claims and that can be resolved "in one stroke." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011).

Here, the same defects that render the proposed class overly broad inherently destroy the requisite Rule 23 commonality. Because the class definition impermissibly includes individuals who provided prior express consent or who maintained an EBR with EverQuote, determining class membership and liability cannot be resolved "in one stroke." *Dukes*, 564 U.S. at 350. Instead, assessing whether each class member provided consent or had an EBR is a classic individualized inquiry. It requires a member-by-member factual analysis of specific past interactions, transactions, or inquiries between that individual and EverQuote, instantly splintering any potential common questions.

Similarly, standing itself is a highly individualized issue that defeats commonality. The Court would be forced to determine whether each putative class member actually took the affirmative step to personally register their telephone number on the National DNC Registry. *See*

14

47 C.F.R. § 64.1200(c)(2); *Rombough*, 2022 WL 2713278 at *2. This simply cannot be answered with common, class-wide proof.

Because the claims of the proposed class will inevitably depend on evidence that varies from member to member, commonality is absent on the face of the pleadings. No amount of discovery can cure this deficiency, and the class allegations must therefore be stricken.

**C.   The Proposed Class Is Uncertifiable Because It Is Not Defined On Objective Criteria And Instead Depends On Resolution Of A Merits Inquiries.**

A class must be defined using administratively feasible, objective-based criteria. *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016) (citing *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 525 (6th Cir. 2015) (For "a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria."); *Byrd v. Aaron's Inc.*, 784 F.3d 154 (3d Cir. 2015), *as amended* (Apr. 28, 2015) (explaining that a class must be defined with reference to objective criteria in order to be ascertainable); *see also de Lacour v. Colgate-Palmolive Co.*, 338 F.R.D. 324, 339 (S.D.N.Y. 2021), *lv. to app. den.*, No. 21-1234, 2021 WL 5443265 (2d Cir. Sept. 16, 2021) ("[A] class must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member, and must be defined by objective criteria that are administratively feasible, such that identifying its members would not require a mini-hearing on the merits of each case.") (internal quotation marks omitted) (citation omitted). A class defined based upon the merits of a claim is simply not certifiable. *St. Louis Heart Ctr., Inc. v. Vein Centers for Excellence, Inc.*, No. 4:12 CV 174 CDP, 2017 WL 2861878, at *5-6 (E.D. Mo. July 5, 2017) (decertifying class where class was based on objective criteria and therefore, not ascertainable).

This is so because merits determinations must not be made at the certification stage—yet a class defined based upon the merits of a claim assures that all members of a class have already won on a critical substantive issue. *MSP Recovery Claims v. Plymouth Rock Assur. Corp., Inc.*, 404 F. Supp. 3d 470, 485 (D. Mass. 2019); *see also Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016) (explaining that a "district court can consider the merits 'only' to the extent 'they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'") (citation omitted). A class must therefore be ascertainable without inquiring into the merits of the case. *St. Louis Heart Ctr., Inc.*, 2017 WL 2861878 at *5 ("There is no objective criterion available to accurately identify potential class members, making the class unascertainable."); *Saf–T–Gard Int'l, Inc. v. Wagener Equities, Inc.*, 251 F.R.D. 312, 314 (N.D. Ill. 2008) ("The court must assess the appropriateness of class certification without regard to the merits of the case.") (quoting *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 474 (7th Cir.1997)); *Sowders v. Scratch Fin., Inc.*, No. 3:23-CV-56, 2023 WL 7525900, at *9-10 (S.D. Ohio Nov. 14, 2023) (granting the defendant's motion to strike the plaintiff's class allegations where the proposed class definition included those who received a fax "not including the opt-out notice required by 47 U.S.C. § 227(b)(2)(D)" because this definition improperly predicated class membership on the ultimate legal conclusion of the claim).

Here, Plaintiff's proposed class is impermissibly defined by ultimate merits determinations rather than objective, administratively feasible criteria. Specifically, class membership hinges entirely on whether an individual received a "telemarketing" call or text message. To simply identify who belongs in the class, this Court would be forced to conduct a massive, individualized review of the specific content and context of every single communication to determine if it legally constitutes "telemarketing" under the TCPA. These plainly are merit determinations. *Weister v.*

16

*Vantage Point AI, LLC*, No. 8:21-CV-1250-SDM-AEP, 2022 WL 3139373, at *7-8 (M.D. Fla. Aug. 3, 2022), motion to certify appeal denied, No. 8:21-CV-1250-SDM-AEP, 2022 WL 7026495 (M.D. Fla. Oct. 12, 2022) (considering whether the at-issue calls are "telemarketing" a merits challenge); *Broking v. Green Brook Buick GMG Suzuki*, No. CV151847BRMLHG, 2017 WL 3610490, *5-6 (D.N.J. Aug. 22, 2017) (finding that the at-issue call from the defendant did not violate the TCPA because it did not constitute telemarketing); *Daniel v. Five Stars Loyalty, Inc.*, No. 15-CV-03546-WHO, 2015 WL 7454260, *6-7 (N.D. Cal. Nov. 24, 2015) (dismissing a complaint where the text sent by defendant did not violate the TCPA because it was not telemarketing).

The assumption that any merit has been met by allowing, rather than striking, these class definitions would be highly prejudicial to EverQuote. Because this defect is incurable and apparent on the face of the Complaint, this Court should strike the class allegations here and now.

## V.   **CONCLUSION**

For the foregoing reasons, EverQuote respectfully requests that the Court strike Plaintiff's class allegations in their entirety.

///

Dated: March 23, 2026

Respectfully submitted,

*/s/ Christopher B. Parkerson*
Christopher B. Parkerson, (BBO#662952)
20 City Square, Suite 300
Boston, MA 02129
Telephone: (617) 241-3075
cparkerson@campbell-trial-lawyers.com

AND

Eric J. Troutman (*pro hac vice)*
Tori L. Guidry (*pro hac vice*)
400 Spectrum Center Drive
Suite 1550
Irvine, CA 92618
Telephone: (949) 350-3663
Facsimile:(949)203-8689
tori@troutmanamin.com

*Counsel for Defendant EverQuote, Inc. \*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 23, 2026, a copy of the foregoing was filed electronically and served by other electronic means on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by e-mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Christopher B. Parkerson*
Christopher B. Parkerson

18