IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **LEON WEINGRAD**, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>**EVERQUOTE, INC**.,<br><br>*Defendant.* | Case No. 1:26-cv-10197<br><br>Leave to File Granted on April 27, 2026 (ECF No. 42).<br><br>Hon. Paul G. Levenson |

**DEFENDANT EVERQUOTE, INC.'S
REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION**

Defendant EverQuote, Inc. ("EverQuote"), respectfully submits this Reply in support of its Motion to Compel Arbitration. *See* ECF No. 17.

I.    **INTRODUCTION**

Plaintiff's Opposition does not overcome the record evidence establishing that Plaintiff agreed to arbitrate his claims against EverQuote. Plaintiff visited EverQuote's Website, entered his personal information, and clicked "Get My Quotes"—accepting the Website's Terms of Use, including a mandatory arbitration provision and class action waiver. *See* ECF No. 18 at pp. 9-13; Contois Decl. ¶¶ 10-17 (ECF No. 18-1). Plaintiff's Opposition does not dispute that EverQuote's records reflect the submission occurred using Plaintiff's exact telephone number. Instead, Plaintiff offers a self-serving Declaration asserting that he had no access to the internet that day. But Plaintiff's Declaration does not overcome EverQuote's business records establishing that his exact telephone number was submitted on the Website and that EverQuote's system could not have obtained that number any other way. Contois Decl. ¶ 17. Plaintiff's after-the-fact denial does not

1

erase the Website submission made with his own telephone number.

Here, Plaintiff raises four additional arguments: (1) that the delegation clause does not foreclose judicial review; (2) that the Website's agreement is unenforceable browsewrap; (3) that Plaintiff's TCPA claims fall outside the scope of the arbitration provision; and (4) that the disclosure's use of the pronoun "you" renders the consent grammatically incoherent. None defeats arbitration. Each fails for the reasons set forth below. Once formation is established, the delegation clause sends Plaintiff's remaining scope, applicability, and enforceability arguments to the arbitrator. And even if the Court reaches those arguments, they fail on their own terms.

## II.     ARGUMENT

### A.     EverQuote's Business Records Establish Formation, And Plaintiff's Declaration Does Not Create A Genuine Dispute.

The Contois Declaration establishes through EverQuote's internal business records that Plaintiff visited the Website, submitted his telephone number ending in 7476 and an email address, and clicked the "Get My Quotes" button on January 14, 2026. Contois Decl. ¶¶ 10-11, 17. The Declaration is based on personal knowledge (¶¶ 3-5), review of records created at or near the time of the interaction (¶¶ 8-9), and EverQuote's regular business practices (¶ 9). These records are admissible under Federal Rule of Evidence 803(6). They are competent evidence supporting EverQuote's threshold showing that an arbitration agreement was formed.

Plaintiff attacks the Declaration as "conclusory hearsay." Opp. at p. 4. Courts in this District have rejected materially similar challenges. In *Pan v. Experian Info. Sols., Inc.*, No. 24-CV-12963-DJC, 2025 WL 2607941 (D. Mass. Sept. 9, 2025) (Casper, C.J.), the court upheld the admissibility of a corporate employee's declaration authenticating enrollment records over the same objections Plaintiff raises here—that the declarant was not present when the plaintiff used the website, that no IP address was attached, and that the declaration was "identical" to declarations

filed in other cases. *Id.* at *2-4. The court found the declaration admissible because the declarant's "position" and "duties" and "review of internal documents and records" established personal knowledge. *Id.* at *3. The same is true here.

Nor does Plaintiff's own Declaration create a genuine dispute sufficient to defeat the Motion. In *Pan*, the plaintiff similarly declared that he "never clicked anything indicating that [he] agreed to waive [his] right to a jury trial" and claimed he had never heard of CreditWorks. *Pan,* 2025 WL 2607941 at *4. The court found this insufficient because the plaintiff "does not dispute that he visited the webpage in question, that he signed up for an account, that the webpage appeared as defendant describes it, or that he had an opportunity to review the Terms of Use." *Id.* Here, Plaintiff goes further by denying that he visited the Website at all. But his denial is uncorroborated and contradicted by EverQuote's business records showing that his exact telephone number was submitted on the Website. Contois Decl. ¶¶ 10-11. The Court should not disregard competent business records simply because Plaintiff now denies the transaction those records memorialize.

Plaintiff argues that EverQuote failed to produce metadata—such as the IP address, timestamp, and device type—that the Contois Declaration confirms EverQuote captures. Opp. at p. 4. But EverQuote was not required to produce its entire evidentiary file at the motion stage. The Contois Declaration presented the threshold showing necessary to establish formation. *See* ECF No. 18 at pp. 9-13. EverQuote stands ready to produce its full evidentiary record, including metadata, should the Court require it. Plaintiff's demand for additional records does not render EverQuote's existing business records inadmissible, nor does it entitle Plaintiff to avoid arbitration based on denial alone.

Moreover, Plaintiff's reliance on *Hobbs v. Apollo Interactive, Inc.*, 2019 WL 6878863 (M.D. Ga. Dec. 17, 2019), is misplaced. In *Hobbs*, the defendant produced specific metadata—an

3

IP address in Norcross, Georgia and a Windows 7 operating system—and the plaintiff directly rebutted that metadata by showing he was driving between two distant cities at the exact time of the alleged submission and did not own a Windows 7 device. *Id.* at *1-2. Plaintiff has not rebutted any specific metadata here. Plaintiff's alibi—that he was in a deposition—does not rebut EverQuote's business records; it merely offers his own account. Similarly, *Conrad v. Camping World Holdings Inc.*, 2025 WL 66689 (N.D. Ala. Jan. 9, 2025), is inapposite. There, the plaintiff proved he did not even possess the phone number at the time of the alleged opt-in—he was randomly assigned the number over a year later. *Id.* at *2. Here, Plaintiff does not contend that the telephone number was assigned to him only after the Website submission. To the contrary, his claims are based on calls to that same number in January 2026.

Plaintiff's Opposition confirms why *Hobbs* and *Conrad* do not control. Plaintiff attacks EverQuote for not attaching additional metadata, but he does not dispute that EverQuote's internal business records identify his exact telephone number and reflect a completed Website submission. Unlike *Conrad*, this is not a recycled-number case. And unlike *Hobbs*, Plaintiff has not rebutted specific metadata produced by EverQuote; he asks the Court to disregard EverQuote's business records because he says they must be wrong. That is not enough to deny arbitration.

Accordingly, EverQuote's business records establish formation, and Plaintiff's denial does not justify denying the Motion.

**B.    The Website Agreement Is Enforceable Under Massachusetts Law.**

Plaintiff characterizes EverQuote's agreement as unenforceable "browsewrap." Opp. at pp. 11-16. It is not. As set forth in EverQuote's Memorandum, the Website employs a clickwrap format: the user must affirmatively click the "Get My Quotes" button to proceed, and the disclosure directly below the button expressly links that click to acceptance of the Terms of Use. Contois

Decl. ¶¶ 14-15. Under Massachusetts law, the enforceability of online agreements turns on whether the terms were "reasonably communicated" and whether the user "reasonably manifested assent." *Kauders v. Uber Techs., Inc.*, 486 Mass. 557, 159 N.E.3d 1033, 1048-49 (2021); *Toth v. Everly Well, Inc.*, 118 F.4th 403, 410-11 (1st Cir. 2024). EverQuote's Website satisfies both prongs. *See* ECF No. 18 at pp. 11-13 (collecting cases enforcing clickwrap agreements under Massachusetts law).

Plaintiff relies heavily on *Gaker v. Citizens Disability, LLC*, 654 F. Supp. 3d 66 (D. Mass. 2023). But *Gaker* involved the "Super-Sweepstakes.com" website—a sweepstakes site decorated with images of gold coins and dollar signs, where the consent language appeared in small navy blue font against a royal blue background at the very bottom of the page, with promotional advertisements separating the "CONFIRM YOUR ENTRY" button from the disclosure. *Id.* at 75-76. The court found the "totality of the page strongly indicates an intent to distract a reasonable user from the language." *Id.* Conversely, EverQuote's Website bears no resemblance to that design. It is a legitimate insurance quote website. Plaintiff identifies no comparable sweepstakes imagery, no promotional distractions, no blue-on-blue concealment, and no intervening advertisements separating the button from the disclosure. The disclosure appears directly below the "Get My Quotes" button in legible text with no intervening content. Its opening words—"By clicking Get My Quotes and submitting this form"—explicitly link the act of clicking to acceptance of the terms. The "Terms of Use" are hyperlinked in contrasting blue underlined text. Contois Decl. ¶¶ 14-16. Plaintiff's formatting criticisms do not change the result. The disclosure expressly connected the user's click to assent to the Terms of Use, specifically referenced the arbitration provision, and placed the Terms hyperlink directly in the disclosure. That is reasonable notice under Massachusetts law.

Courts in this District have consistently enforced agreements with this structure. *See* ECF No. 18 at pp. 11-13 (collecting cases enforcing agreements with similar disclosure structures). Most recently, in *Schwartz v. HelloFresh SE*, No. 1:25-CV-12222-JEK, 2026 WL 161514 (D. Mass. Jan. 21, 2026) (Kobick, J.), the court enforced an online agreement where the user clicked a toggle switch with adjacent language stating "By checking the box above, I agree to Factor's Terms and Conditions." While *Schwartz* involved a separate toggle switch, the court's analysis turned on whether the connection between the user's action and the terms was "direct and unambiguous"—the same standard EverQuote's disclosure satisfies. *Id.* at *5. EverQuote's disclosure goes further because it expressly references "the arbitration provision" on the face of the form. Nor are *Pan* and *Schwartz* outliers. In *Toth*, the First Circuit enforced an online agreement where the user was presented with linked terms and took an affirmative action signifying acceptance. 118 F.4th at 411-14. And in *Good v. Uber Techs., Inc.*, 494 Mass. 116, 133 (2024), the Supreme Judicial Court confirmed that hyperlinks are commonly understood when presented in the ordinary blue, underlined format. Here, the Terms of Use hyperlink appeared in underlined blue text within the disclosure itself. Contois Decl. ¶ 16.

Plaintiff's reliance on the Ninth Circuit's decision in *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849 (9th Cir. 2022), and *Rojas v. GoSmith, Inc.*, 2020 WL 831585 (N.D. Ind. Feb. 20, 2020), is misplaced. Both are out-of-circuit decisions. In *Berman*, the disclosure appeared in "tiny gray font" that was "barely visible to the naked eye." *Berman,* 30 F.4th at 856-57. In *Rojas*, the button text ("See Job Matches") contained no reference to agreement, and the arbitration checkbox was on a separate portion of the page the plaintiff never interacted with. *Rojas,* 2020 WL 831585 at *3-4. EverQuote's design is materially different: the disclosure is legible, directly adjacent to the button, its opening words explicitly connect the click to acceptance,

and the language specifically states that Plaintiff was agreeing to an arbitration provision. *See* ECF No. 18 at pp. 11-13.

At bottom, Plaintiff cannot overcome the disclosure's plain language tying the user's click to acceptance of the Terms of Use, including arbitration.

**C.    The Delegation Clause Reserves Plaintiff's Remaining Challenges For The Arbitrator, And Each Fails Independently.**

EverQuote agrees that formation challenges are for the Court. *See Toth*, 118 F.4th at 409-13; *Coinbase, Inc. v. Suski*, 602 U.S. 143, 151 (2024). But once the Court determines that a valid agreement exists, the delegation clause requires all remaining disputes to be resolved by the arbitrator. The Terms of Use provide: "All issues are for the arbitrator to decide, including, without limitation, issues relating to the applicability and enforceability of this arbitration agreement." Contois Decl. ¶ 19; *see* ECF No. 18 at pp. 13-14 (discussing delegation clause and Terms of Use). This language, combined with the incorporation of the AAA Rules, constitutes "clear and unmistakable" evidence of intent to delegate. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019); *Bossé v. N.Y. Life Ins. Co.*, 992 F.3d 20, 27-29 (1st Cir. 2021). *See also Schwartz*, 2026 WL 161514, at *5-6 (finding materially similar delegation language constituted "clear and unmistakable delegation"). Plaintiff's challenges to the scope of the arbitration clause, the "you" pronoun, and the class action waiver are questions of *validity* and *scope*—not *formation*—and belong to the arbitrator.

Even if the Court reaches these arguments, each fails independently. On scope, Plaintiff relies on *Starling v. OnProcess Tech., Inc.*, 2024 WL 1258501 (D. Mass. Mar. 25, 2024) (Kobick, J.), for the proposition that TCPA claims are "independent" statutory claims outside the arbitration clause's reach. Opp. at p. 17. But in *Starling*, the plaintiff was a complete stranger to the contract— she had never entered any agreement with AT&T, never visited AT&T's website, and her phone

number appeared on a family member's account as an alternate contact. The court held that a nonsignatory could not be compelled to arbitrate under equitable estoppel because the TCPA claims did not "flow directly from the agreement." *Id.* at \*6; s*ee also Schwartz*, 2026 WL 161514, at \*6-7 (reaching same result where nonsignatory HelloFresh sought to invoke signatory Factor75's arbitration clause against TCPA plaintiff). This case is fundamentally different. EverQuote is not a nonsignatory trying to enforce another company's agreement. EverQuote is both the website operator *and* the party whose calls Plaintiff challenges. The arbitration clause is in EverQuote's own Terms of Use—not in an unrelated contract with a third party. Indeed, Plaintiff's telephone number was submitted directly on EverQuote's Website. Contois Decl. ¶ 17. Plaintiff's TCPA claims therefore "aris[e] out of or relat[e] in any way to" his "use of the Site." *See* ECF No. 18 at pp. 14-16. They also arise from the same disclosure that expressly authorized marketing and telemarketing calls to the number Plaintiff provided, even if that number appeared on a Do Not Call Registry. Contois Decl. ¶¶ 11, 14.

On the "you" pronoun, Plaintiff contends the disclosure is grammatically incoherent because the pronoun lacks an antecedent. Opp. at pp. 17-19. That argument ignores context and improperly isolates a single word from the disclosure and the incorporated Terms. The disclosure appears on auto.everquote.com—a website owned and operated by EverQuote. Contois Decl. ¶ 6. When a user reads "I am providing express written consent to being contacted by you," the "you" naturally refers to the entity operating the website—the same entity whose name appears in the URL. The Terms of Use, which the disclosure expressly incorporates, confirm this reading: "The Terms constitute a legally binding agreement between you and us, EverQuote.com, the operator of the Site (hereafter referred to as "we", "us" or "our"). References in these Terms to 'Site operator,' 'we', 'us' and 'our' include our affiliates (including, without limitation, EverQuote,

Inc.) . . . ." Contois Decl. ¶ 19 (ECF No. 18-1); Ex. B (Terms of Use) (ECF No. 18-2). Read as a whole, the disclosure and Terms identify EverQuote as the Website operator and the entity accepting the user's assent. Moreover, even under Plaintiff's strained reading, the disclosure also separately lists "EverQuote Marketing Partners"—a hyperlinked term that includes EverQuote—as an entity the user consents to be contacted by. Consent runs to EverQuote regardless.

Plaintiff's reliance on *Mantha v. QuoteWizard.com, LLC*, No. 19-12235-LTS, 2021 WL 6061919, at *8 (D. Mass. Dec. 13, 2021), does not change the analysis. *Mantha* addressed whether a TCPA consent disclosure identified the specific seller for purposes of prior express written consent. It did not hold that a user can avoid a separately hyperlinked arbitration agreement by isolating one pronoun from a disclosure on the Website operator's own page. Here, the user accepted the Website's Terms of Use, and those Terms expressly include EverQuote within the relevant "Site operator," "we," "us," and "our" language. Contois Decl. ¶ 19 (ECF No. 18-1); Ex. B (Terms of Use) (ECF No. 18-2). At minimum, Plaintiff's pronoun argument raises an issue of interpretation, scope, or applicability, not formation. The delegation clause assigns that issue to the arbitrator.

Lastly, Plaintiff's challenge to the class action waiver rises and falls with the Motion to Compel. If a valid agreement was formed, the waiver is enforceable. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011); *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013); *see* ECF No. 18 at pp. 16-17. Plaintiff's severability argument—that if the waiver is invalid, all of Section 2 is void—is circular: the waiver is invalid only if no contract was formed, in which case there is nothing to sever. If the agreement was formed, Plaintiff identifies no independent basis to invalidate the class waiver. And if the Court compels arbitration, the class waiver must be enforced according to its terms.

9

At bottom, Plaintiff cannot avoid arbitration by recasting every scope, applicability, and waiver argument as a formation defect. Once the Court confirms that the Website submission constituted an agreement, the Terms require that this dispute proceed in individual arbitration.

## III.    **CONCLUSION**

For the foregoing reasons, EverQuote respectfully requests the Court compel the arbitration of Plaintiff's claims.

Dated: May 11, 2026                         Respectfully submitted,

                                            */s/ Christopher B. Parkerson*
                                            Christopher B. Parkerson, (BBO#662952)
                                            Campbell Conroy & O'Neil, P.C.
                                            20 City Square, Suite 300
                                            Boston, MA 02129
                                            Telephone: (617) 241-3075
                                            cparkerson@campbell-trial-lawyers.com

                                            AND

                                            Eric J. Troutman (*pro hac vice)*
                                            Tori L. Guidry (*pro hac vice*)
                                            Blake H. Landis (*pro hac vice*)
                                            Troutman Amin, LLP
                                            400 Spectrum Center Drive
                                            Suite 1450
                                            Irvine, CA 92618
                                            Telephone: (949) 350-3663
                                            Facsimile:(949)203-8689
                                            tori@troutmanamin.com

                                            *Counsel for Defendant EverQuote, Inc.*

10

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on May 11, 2026, a copy of the foregoing was filed electronically and served by other electronic means on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by e-mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Christopher B. Parkerson*
Christopher B. Parkerson